ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

CASE NUMBER: _____

**Superior Court of California, County of Santa Clara**
**191 N. First St., San Jose, CA 95113**

## READ THIS ENTIRE FORM

***PLAINTIFFS*** (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

> ***DEFENDANTS*** (The person(s) being sued): You must do each of the following to protect your rights:
>
> 1. You must file a written response to the *Complaint*, in the Clerk's Office of the Court, within **30 days** of the date the *Summons* and *Complaint* were served on you;
> 2. You must send a copy of your written response to the plaintiff; and
> 3. You must attend the first Case Management Conference.
>
>    **Warning: If you do not do these three things, you may automatically lose this case.**

***RULES AND FORMS:*** You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing: 408-293-8177 or becky@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

***CASE MANAGEMENT CONFERENCE (CMC):*** You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

> Your Case Management Judge is: **Joseph Huber** _____ Department: **8** ___
>
> The 1st CMC is scheduled for: (Completed by Clerk of Court)
>
>     Date: **FEB 1 9 2008** Time: **1:30pm** in Department **8** ___
>
> The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
>
>     Date: _____ Time: _____ in Department _____

***ALTERNATIVE DISPUTE RESOLUTION (ADR):*** If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

***WARNING:*** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?

< **Mediation** is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

CV-5003 REV 5/06

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMITECH USA, LTD.
DOES 1 - 100

SEP 25 07

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

J. W. EBERT CORPORATION

J. Zenzen

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted puede usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SANTA CLARA COUNTY SUPERIOR COURT<br>191 N 1ST STREET<br>SAN JOSE, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>1-07-CV-094997 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
STEVEN J. ROTH 408/993-9911
333 WEST SAN CARLOS ST, #1600 SAN JOSE, CA 95110

| DATE: SEP 2 5 2007<br>*(Fecha)* | Kiri Torre<br>Chief Executive Officer/Clerk | Clerk, by<br>*(Secretario)* | J. Zenzen | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

www.accesslaw.com

1  STEVEN J. ROTH (State Bar No. 77963)
   EDWARD A. KRAUS (State Bar No. 162043)
2  Reed & Roth
   333 W. San Carlos St. #1600
3  San Jose, CA 95110
   Telephone: (408) 993-9911
4  Fax: (408) 993-1335

5  Attorneys for Plaintiff,
   J. W. EBERT CORPORATION, a California Corporation
6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF SANTA CLARA

10 J. W. EBERT CORPORATION, a California      )  Case No. 107CV094997
   Corporation                                )        FIRST AMENDED
11                                            )  COMPLAINT FOR DAMAGES FOR
                                              )  NEGLIGENCE, BREACH OF CONTRACT,
12              Plaintiff,                     )  BREACH OF WARRANTIES, BREACH OF
                                              )  IMPLIED WARRANTIES OF FITNESS AND
13      vs.                                   )  MERCHANTABILITY, IMPLIED
                                              )  INDEMNITY AND DECLARATORY RELIEF
14 AMITECH USA, LTD.                          )
                                              )
15 and DOES 1-100,                            )
                                              )
16              Defendants.                    )
                                              )
17                                            )
                                              )
18                                            )
                                              )
19 _____)

20      Plaintiff hereby alleges as follows:

21                       PRELIMINARY ALLEGATIONS

22      1.   Plaintiff, J. W. EBERT CORPORATION is a California Corporation authorized to do

23 business in the State of California, and at all times pertinent hereto it was a fully licensed and

24 insured general engineering contractor (Class A) and also a sanitation system contractor (Class

25 C42).

26      2.   Plaintiff is informed and believes, and thereon alleges, that at all times pertinent hereto,

27 Defendant AMITECH USA, LTD. Was, and is, an entity of unknown type that was doing business

28 in and under the laws of the State of California as a seller of commercial Flowtite Pipe that was

1 designed and manufactured by Defendant AMITECH USA, Ltd. and delivered to Plaintiff pursuant

2 to the terms of a written agreement dated 3/9/06 between plaintiff and defendant AMITECH USA,

3 Ltd. (Copy attached as Exhibit A)

4     3.   The contract was entered into in California and it provides the sale of Flowtite Pipe for use

5 by Plaintiff in competing a construction contract with the City of San Jose for retrofitting

6 underground sewer pipe in Santa Clara County. The failure of the pipe caused damages in Santa

7 Clara County, California.

8     4.   Plaintiff is informed and believes, and thereon alleges, that Defendants DOES 1 through

9 100 are business entities of a form unknown to Plaintiff, duly authorized to do business and doing

10 business within the State of California.

11     5.   Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1

12 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will

13 amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is

14 informed and believes, and thereon alleges, that each of said fictitiously named Defendants is in

15 some manner responsible for the occurrences herein alleged, and that Plaintiff's damages as herein

16 alleged were proximately caused by said defendants.

17     6.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein,

18 each of the defendants was the agent, and/or employee of each of the remaining defendants, and in

19 doing the things hereinafter alleged, was acting within the scope of such agency and/or

20 employment, and that each defendant ratified and approved the acts of each of the remaining

21 defendants.

22     7.   Plaintiff is informed and believes, and thereon alleges, that Plaintiff's damages exceed the

23 minimum jurisdictional amounts of this Court.

24     8.   The defects and damages alleged herein related to the Flowtite pipe manufactured by

25 defendant AMITECH USA, Ltd. were discovered on or about October 23, 2006.

26 /

27 /

28 /

## FIRST CAUSE OF ACTION

## NEGLIGENCE IN DESIGN AND MANUFACTURE

9.    Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and incorporates them by reference as though fully set forth at length herein.

10.    As hereinabove alleged, Defendant AMITECH USA, Ltd., at all times relevant hereto engaged in the business of designing and manufacturing, among other products, Flowtite pipe, including the pipe sold to Plaintiff and used by Plaintiff in a contract with the City of San Jose.

11.    Defendant intended that the Flowtite Pipe manufactured and delivered by Defendant be used by contractors such as Plaintiff in fulfilling construction contracts for the construction of sewer projects and that such contractors would use the pipe without inspection for interior defects.

12.    At the time the Flowtite pipe was purchased and installed by Plaintiff the Flowtite pipe was defective and unsuited for its intended purpose and did not perform its stated purpose of containing liquids as sewer pipes.

13.    The joints between the Flowtite pipes leaked as a result of defective design and manufacture by Defendant. The steel joints to the Flowtite pipes failed. These failures caused the pipes to leak at the joints.

14.    Several means of correcting the leaks were pursued by Plaintiff with the advice and consent of Defendant, and none corrected the problem.

15.    As a proximate result of the defects in design and manufacture of the Flowtite pipes by Defendant, Plaintiff has suffered damages in an amount to be shown according to proof at trial, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

/

/

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

16.  Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and the First Cause of Action and incorporates them by reference as though fully set forth at length herein.

17.  Defendant entered into a agreement with Plaintiff for the manufacture of Flowtite pipes to be delivered by Defendant to Plaintiff.

18.  Under the terms of the written agreement, Defendant was obligated to provide leak-proof Flowtite pipes to Plaintiff for use by Plaintiff in completing Plaintiff's contract obligations under a contract between Plaintiff and the City of San Jose.

19.  Under the terms of the agreement, Defendant was obligated to provide Flowtite pipes free from material defects, and adequate for their intended purpose.

20.  Plaintiff has fully and completely performed all of the terms, conditions, covenants, and promises of the contracts on its part to be performed, all conditions precedent to performance on the part of Defendant have occurred, and Plaintiff has demanded performance from Defendant.

21.  Defendant breached the terms of its agreement by, among other things, failing to properly design and manufacture the Flowtite pipe delivered to Plaintiff and by failing to properly insure that the pipe and its joints did not leak.

22.  Defendant breached its agreement and thereby caused Plaintiff to suffer additional costs of correcting the defects and to incur overhead charges under Plaintiff's contract with the City of San Jose by failing to meet the agreed upon delivery schedule for the Flowtite pipe's delivery to Plaintiff.

23.  As a proximate result of the breach of contract by Defendant, Plaintiff has suffered damages in an amount to be shown according to proof at trial, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**THIRD CAUSE OF ACTION**

**BREACH OF WARRANTY**

24.   Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and the First and Second Causes of Action and incorporates them by reference as though fully set forth at length herein.

25.   As alleged, Defendant entered into a written agreement with Plaintiff, one term of which is an 18 month warranty period.

26.   Defendant's Flowtite pipes are defective in that the joints between the pipes, and specifically the collars affixed to the pipes by Defendant will not hold water.

27.   Defendant has been given notice of the breach and has declined to make further efforts to fix the problem, several proposed corrections already having failed to cure the problem with the steel collars.

28.   As a proximate result of the breach of contract by Defendant, Plaintiff has suffered damages in an amount to be shown according to proof at trial, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY**

29.   Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and the First through Third Causes of Action, inclusive, and incorporates them by reference as though fully set forth at length herein.

30.   As alleged above, Defendant entered into a written contract to provide Flowtite pipe to

1   Plaintiff for use in a contract with the City of San Jose.

2      31.  Defendant impliedly warranted that the Flowtite pipe provided by Defendant would be of

3   merchantable quality and reasonably fit for their intended purpose and that the design and

4   manufacture related thereto would be done in a careful and workmanlike manner, to produce

5   reasonably water-tight pipe joints that would not leak.

6      32.  Plaintiff was in privity with Defendant.

7      33.  The above-referenced warranties provided by Defendant have been breached in that the

8   materials, workmanship, and labor were not performed as reasonably intended to allow for the leak

9   proof integrity of the Flowtite pipe joints, including but not limited to the improper application of

10  epoxy intended to secure the steel collars to the Flowtite pipe such that the pipe joints would remain

11  water tight. When tested for their intended use, the joints fail.

12     34.  Notice of the breach has been give to Defendant.

13     35.  As a proximate result of the breach of contract by Defendant, Plaintiff has suffered

14  damages in an amount to be shown according to proof at trial, including but not limited to monetary

15  damages due to repair and replacement of seals made necessary by defective pipe joints, overhead,

16  labor and expenses related to corrective work undertaken by Plaintiff, additional legal and

17  professional costs and other incidental and consequential damages.

18     WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

19

20                            **FIFTH CAUSE OF ACTION**

21                            **IMPLIED INDEMNITY**

22     36.  Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations

23  and First through Fourth Causes of Action, inclusive, and incorporated them by reference as though

24  fully set forth at length herein.

25

26     37.  Plaintiff is incurring attorney's fees, court costs, investigative costs and other costs in

27  connection with Plaintiff's continuing attempts to correct the defects in Defendant's Flowtite pipe in

28  order to mitigate any damages to be suffered under Plaintiff's contract with the City of San Jose, the

    exact amount of which is unknown at this time.

38. To the extent that Plaintiff has incurred, or will incur, costs, expenses and damages related to Plaintiff's contract with the City of San Jose, that liability will be solely due to Defendant's negligent faulty design and manufacture of Flowtite pipe. Defendant will therefore be liable and bound to pay to Plaintiff all or a portion of any and all damages which have been incurred tod and also those that might be adjudged to be due and owing to the City of San Jose against Plaintiff.

39. To the extent that Plaintiff has incurred, or will incur costs, expenses and damages related to Plaintiff's contract with the City of San Jose, that liability is vicarious only and is the direct and proximate result of Defendant's negligent faulty design and manufacture of Flowtite pipe. Therefore, Plaintiff is entitled to be indemnified by Defendant to the extent of all of such liability.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF

40. Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and First through Fifth Causes of Action, inclusive, and incorporated them by reference as though fully set forth at length herein.

41. A controversy currently exists between the parties concerning the written agreement between them. The agreement is silent as to whether or not Plaintiff is within its rights to withhold a portion of the payment claimed by Defendant for providing Flowtite pipe to Plaintiff.

42. Plaintiff claims a right of set off to protect it from injury caused by Defendant, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

/

/

/

/

**PRAYER**

WHEREFORE, Plaintiff prays for judgment as follows:

AS TO THE FIRST THROUGH THE FOURTH CAUSE OF ACTION;

1. Compensatory damages according to proof;

2. Monetary damage due to repair and replacement of damaged pipe seals and other damaged property and materials of construction;

3. Monetary damage due to testing, investigation and professional consultation;

4. Monetary damage due to liquidated damages to the City of San Jose;

5. Consequential damages according to proof;

6. For attorneys fees, costs, and litigation expenses incurred herein;

7. For such other and further relief as the Court may deem just and proper.

AS TO THE FIFTH CAUSE OF ACTION;

8. Compensatory damages according to proof;

9. Monetary damage due to repair and replacement of damaged pipe seals and other damaged property and materials of construction;

10. Monetary damage due to testing, investigation and professional consultation;

11. Monetary damage due to liquidated damages to the City of San Jose;

12. Consequential damages according to proof;

13. For attorneys fees, costs, and litigation expenses incurred herein;

14. For a declaration of this Court that Plaintiff is entitled to be indemnified and held harmless by Defendants, for the full amount of damages, costs and expenses, incurred by Plaintiff as a result of Defendant's negligent design and manufacture of the Flowtite pipe sold by Defendant to Plaintiff;

15. For such other and further relief as the Court may deem just and proper.

AS TO THE SIXTH CAUSE OF ACTION;

16. For a declaration of this Court that Plaintiff is entitled to retain amounts claimed by Defendant as a set off pending resolution of the rights and claims of the parties at trial, in the full amount currently being held by Plaintiff, and

17.    For such other and further relief as the Court may deem just and proper.

DATED: 11/15/2007                                    REED & ROTH

                                                     By:    Steven J. Roth
                                                            Attorney for Plaintiff
                                                            J. W. Ebert Corporation

MAR-09-2006  12:20        AMITECH                                    225 658 0947    P.01

**AMIANTIT**                                              **TECH**

Amitech USA, LLC

18585 Samuels Road
Zachary, LA 70791, USA

Helpdesk:    + 1 225 658 8186
Direct:      + 1 (225) 658 2706
Fax:         + 1 225 658 0947
Mobile:      + 1 (225) 413 8099

rgaude@amitechusa.com
www.amitechusa.com

Estimating Fax 510-562-5210

March 8, 2006

McGuire Hester
Attention: Mr. Mike Hester
9009 Railroad Avenue
Oakland, CA 94603

Date:      3/9/2006
Ref:       San Jose Slip-Lining
Your Date: 3/3/06
Your Ref:  "84 San Jose

RE:  "84 RCP Interceptor Rehabilitation Phase

Dear Mr. Hester

We are in receipt of your fax dated March 3, 2006. We have concerns regarding the language under "Acknowledgements" and have rewritten the clause that should be favorable to both parties. It reads, "Seller acknowledges that the pipe outlined on this quotation meets the signed and approved Submittal #4 dated October 5, 2005 (see attached Submittal #4 dated October 5, 2005). Below the "Acknowledgements" included "Amitech USA conditions letter dated Feb 9, 2006 as attached." Also, under Price Calculations, we have included item #3, "Seller to nest pipe and load buyers truck." Last, under Notes, we revised wording to read, "Lay lengths to be within 1 foot of actual, for bends only."

I noticed on your fax correspondence the description "Ebert / M&H JV ..." Can you clarify who my company will invoice for this this project?

We look forward to working with you on this project. With your signatures, we can proceed to confirm your order.

With best regards,

Amitech USA, LLC

Raymond Gaude
Customer Service Manager

CC: James W. Ebert (408) 287-4576

Attachments:  Quotation No: 0405-0057-4

MAR-09-2006  12:20    AMITECH
03/02/2006  19:00    408-287-4576                J W EBERT CORP                225 658 0947   P.02
                                                                              PAGE   01/11



GENERAL ENGINEERING CONTRACTOR
UL #473917

March 2, 2006

Mike Hester, President              **11 Page Fax Only**
McGuire and Hester
9009 Railroad Ave
Oakland, CA 94603

mhester@mcguireandhester.com
(510) 632-7676 phone
(510) 562-5210 fax

Re:   City of San Jose 84-Inch RCP Sewer Rehabilitation Phase VIB
      Pipe Purchase Order

Dear Mr. Hester,

Attached please find the Amitech pipe purchase order document.  I am in agreement with the terms and
conditions in the marked up document and I have signed it for Ebert Corp.  Please finalize the document by
reviewing as you feel necessary and signing where appropriate.  The document should be faxed to:

Maciej Korbasiewicz,
Amitech USA
225-658-0947 fax

My e-mail is down as SBC is switching us to a fiber line, so if you want to discuss this please give me a call on
the cell phone 408-640-2280.

Sincerely,

J.W. Ebert Corp.

James W. Ebert
*President*

McGuire Hester- Mike Hester Pipe PO.doc.doc
              J.W. Ebert Corp.  •  1620 South Seventh Street  •  San Jose, CA 95112-5931
      (408) 297-1031         •         www.ebertcorp.com         •         FAX (408) 287-4576

MAR-09-2006  12:20    AMITECH                    225 658 0947    P.03
03/02/2006  19:00    408-287-4876    J W EBERT CORP    225 658 0947    P.02
FEB-09-2006  18:42    AMITECH

**AMIANTIT**

**AMITECH**

Amitech USA, LLC

15603 Stanton's Road
Zachary, LA 70791, USA

Helpdesk  +1 225 658 9100
Fax        +1 225 658 0947

www.amitechusa.com

J.W. Ebert Corporation
Attn: Jim Ebert
1620 South 7th
San Jose, CA 95112

February 9, 2006

Dear Mr. Ebert,

Please find modifications as we agreed:

- Prices are agreed as in the attached quotation. If additional pipe is ordered after initial order/confirmation buyer will pay new price. (See Quotation No: 0405-0057-4, Date: 2/2/06)

- Amitech USA agrees to warranty its pipe for an 18-month period based on delivery date. (See Terms and Conditions of Sale – 84" RCP Interceptor Rehabilitation Phase Project, Subpart 4. Warranty)

- Seller and Buyer shall be responsible for their own actions. (See Terms and Conditions of Sale – 84" RCP Interceptor Rehabilitation Phase Project, Subpart 5. Damages)

After the test trials with the mandrels, please confirm dimensions so we can confirm delivery schedule.

Our quote is attached for your approval. With your signature, we can place this order into the production schedule enabling us to start procuring supplies necessary for the manufacture of the pipe. Delays in signed approval will affect the delivery schedule in which we are not responsible.

Thanks again and we look forward to a very successful business venture together.

With regards,

Maciej Korbelewicz
Managing Director

Cc: Bill Harrel
     Raymond Gaudé

MAR-09-2006  12:20         AMITECH
03/02/2006  19:08   408-287-4576                    J W EBERT CORP              225 658 0947   P.04

# CONTRACTOR SUBMITTAL SUMMARY

FILE NO.: 3548-36

PROJECT NAME: 84" RCP Interceptor Rehabilitation Ph VIB

| CONTRACTOR: Ebert/McGuire and Hester<br>1620 South Seventh Street<br>San Jose, CA 95112<br><br>ATTN: Jim Ebert | SUBMITTAL NO.:  38 |
|---|---|
| | 1ST☐   2ND☐   3RD■   4TH☐ |
| | DATE RECEIVED: 1/11/06 |
| | DATE RETURNED: 1/12/06 |

| CONTR. SUBMITTAL NO.:        05-100-38<br>ITEM:        Segmented Slipliner Pipe<br>SPEC. SEC./PAGE NO.:    1502-1 / Page 54<br>SUPPLIER/SUBCONTR.:        Amitech<br><br>DETAILED DESCRIPTION | NO. COPIES RECEIVED | REVIEW ACTION | | | | | NO. COPIES RETURNED |
|---|---|---|---|---|---|---|---|
| | | NO EXCEPTIONS OBSERVED | MAKE CORRECTIONS NOTED | REVISE AS NOTED AND RESUBMIT | REJECT - RESUBMIT | | |
| 1.  Segmented Slipliner Pipe | 5 | X | | | | | 3 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**REMARKS:**

1.  Once host pipeline conditions are evaluated contractor shall submit a revised shop drawing and lay schedule.

MAR-09-2006  12:20          AMITECH                              225 658 0947    P.05

,AMIANTIT                                              AMITECH

# Submittal #4

**Project:**        84" RCP Interceptor Rehabilitation Phase
                    San Jose, CA

**Contractor:**     J.W. Ebert Corporation
                    1620 South 7th
                    San Jose, CA 95112

**Submitted by:**   Amitech USA, Ltd.
                    18585 Samuels Road
                    Zachary, LA  70791
                    Phone:  (225) 658-8166
                    Fax:    (225) 658-0947

CITY OF SAN JOSE
DEPARTMENT OF PUBLIC WORKS

JAN 12 '06

Submittal was reviewed for
general conformance to Contract
Documents only. Contractor is res-
ponsible for confirming and cor-
relating full compliance with
Contract Documents. Notations do
not authorize changes to contract
amount.

☒ NO EXCEPTIONS OBSERVED
☐ MAKE CORRECTIONS NOTED
☐ REVISE AS NOTED AND
   RESUBMIT

October 5, 2005

MAR-09-2006  12:20        AMITECH                     225 658 0947    P.06
03/02/2006  19:69    400-287-4576        J W EBERT CORP            PAGE  18/11

**AMIANTIT**                                        **AMITECH**

October 5, 2005

18585 Samuels Road
Zachary, LA 70791, USA

J.W. Ebert Corporation
Attn: Jim Ebert
1620 South 7th
San Jose, CA 95112 USA

Phone:    (225) 658-6166
Fax:      (225) 658-0947

Re: 84" RCP Interceptor Rehabilitation Phase VI B

Dear Mr. Ebert:

Amitech USA has reviewed the project plans and specifications and hereby states the following:

Flowtite Pipe is manufactured in accordance with and meets and/or exceeds the requirements of the following ASTM Specifications:

- ASTM D3262   Standard specification for "fiberglass" (glass-fiber-reinforced thermosetting-resin) sewer pipe

- ASTM D4161   Standard specification for fiberglass pipe joints using flexible elastomeric seals

- ASTM F477    Standard specification for elastomeric seals (gaskets) for joining plastic pipe

- ASTM D2412   Standard test method for determination of external loading characteristics of plastic pipe by parallel plate loading.

- ASTM D2992   Practice for obtaining hydrostatic or pressure design basis for "fiberglass" (glass-fiber-reinforced thermosetting-resin) pipe and fittings

  ASTM D3567   Practice for determining dimensions of "fiberglass" (glass-fiber-reinforced thermosetting-resin) pipe and fittings

- ASTM D3681   Test method for chemical resistance of "fiberglass (glass-fiber-reinforced-thermosetting-resin) in a deflected condition

The following notes are in response to your letter dated October 4, 2005:
1. The attached slip line joint detail drawing provides the maximum outside diameter and minimum internal diameter as documented in the contract specifications. Upon completion of the proof testing of the existing line, Amitech USA will provide an updated slip line joint detail drawing with the final OD and ID dimensions.
2. The maximum allowable grouting pressure for 46 psi stiffness Flowtite GRP pipe is 10 psi.
3. Regarding our submittal of the minimum / maximum pipe lengths or diameters in association with the radii and wear of the existing pipeline, we have just received this information and will evaluate it and respond under separate transmittal. It is our intention to provide a key schedule of the proposed alignment prior to production.

Please read the attached information and verify that it meets your project requirements. After you have read and accepted this package, please return this cover page signed and dated to verify your acceptance.

If you should have any questions or wish to discuss this information further, please do not hesitate to call.

Regards,

*Erica Chandler*

Erica Chandler
Inside Sales Coordinator

Cc:   Bill Harrell
      Dave Gellings

F:\Projects Directory\2005\San Jose - SJipline\Documents\Submittal 2\Cover Letter.doc

| Nominal Diameter (in.) | SN | PN | Pipe ID (in.) | Pipe ID (mm) | Wall Thickness (in.) | Wall Thickness (mm) | Spigot Wall Thickness s (in.) | Spigot Wall Thickness s (mm) | Pipe OD (in.) | Pipe OD (mm) | Stp DOS (in.) | Stp DOS (mm) | Steel Sleeve ID (in.) | Steel Sleeve ID (mm) | Steel Sleeve Thickness s (mm) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 54 | 46 | 50 | 54.286 | 1378.9 | 0.925 | 23.5 | 0.480 | 12.2 | 63.138 | 1625.9 | 63.645 | 1616.9 | 65.664 | 1417.9 | 0.167 | 4.0 |
| 78 | 46 | 50 | 78.390 | 1991.1 | 1.261 | 32.6 | 0.836 | 21.2 | 80.982 | 2056.2 | 80.361 | 2041.2 | 80.480 | 2044.2 | 0.167 | 4.0 |
| 82 | 46 | 50 | 82.434 | 2093.8 | 1.406 | 35.7 | 0.981 | 24.4 | 85.246 | 2166.2 | 84.655 | 2150.2 | 84.774 | 2153.2 | 0.157 | 4.0 |

NOTE:
1. FURNISH SWP PIPE TO BE MANUFACTURED IN ACCORDANCE WITH MECHANISM - LINE 1, TYPE 1, GRADE 1
2. FURNISH SWP PIPE TO BE MANUFACTURED INCH-M D/I WALL DIMENSIONS LISTED IN ACCORDANCE WITH RANGE OF SPECIFICATIONS

**AMITECH**

11565 Samuels Rd.  Zachary, LA 70791
Tele: (225) 654-8166  Fax: (225) 654-0847
www.amitechusa.com

Project:

Sun Ada
Slip Liner Joint Detail

notes: Add Holes per customer's (Contractor) Request

Client:

| | |
|---|---|
| Date | 1/11/03 |
| Date | 12/2005 |
| Department | 1 |
| Revision | EMT |
| Scale | NONE |
| Drawing by | JK |
| Sheet | 1 OF 1 |

MAR-09-2006  12:21   AMITECH   225 658 0947   P.08

**AMITECH**

Amitech USA, LLC

18585 Seminole Road
Zachary, LA 70791, USA

Phone:   225 658 6166
Fax:     225 658 0947

www.amitechusa.com

## QUOTATION NO: 0405-0057-4

**Date: 3/8/2006**

Bidder:

J.W. Ebert Corp.

Attn: Jim Ebert

1820 South Seventh Street
San Jose, CA 95112

Phone (408) 297-1031
Fax   (408) 287-4576

**Project Name:**  84" RCP Interceptor Rehabilitation Phase
**Project Location:**  San Jose, CA

For More Information Contact:
Amitech Regional Manager:
Bill Hamel
Phone: 714-381-2227
Fax:   225-658-0947
Email address: bhamel@amitechusa.com

Manufacturing Representative:
Dave Gellinge
Phone: 916-681-0689
Fax:   916-681-0690

Please disregard all previous quotations made for this project; this is the only valid quotation that Amitech USA will honor.
This quotation is only valid for 10 days.

| Item # | Stock code | QTY ft./pcs | Size [DN] | Description | Pressure Class [PN] | Stiffness Class [SN] | Pipe length [ft] | Unit | Unit price [USD] | Value [USD] |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | QB210540014B020 | 200 | 54 | Flowtite Pipe GRP for sliplining DN54 with Coupling PN001 SN46 L=20ft type SE | 1 | 46 | 20 | ft | 154.00 | 30,800.00 |
| 2 | QB210780014B020 | 1680 | 76 | Flowtite Pipe GRP for sliplining DN78 with Coupling PN001 SN46 L=20ft type SE | 1 | 46 | 20 | ft | 279.30 | 469,224.00 |
| 3 | QB210840014B020 | 2740 | 82 | Flowtite Pipe GRP for sliplining DN82 with Coupling PN001 SN46 L=20ft type SE | 1 | 46 | 20 | ft | 336.20 | 921,188.00 |
| 4 | QB210540014B010 | 10 | 54 | Flowtite Pipe GRP for sliplining DN54 with Coupling PN001 SN46 L=10ft type SE | 1 | 46 | 10 | ft | 201.00 | 2,010.00 |
| 5 | QB210780014B010 | 10 | 76 | Flowtite Pipe GRP for sliplining DN78 with Coupling PN001 SN46 L=10ft type SE | 1 | 46 | 10 | ft | 349.00 | 3,490.00 |
| 6 | QB210840014B010 | 20 | 82 | Flowtite Pipe GRP for sliplining DN82 with Coupling PN001 SN46 L=10ft type SE | 1 | 46 | 10 | ft | 386.00 | 7,720.00 |
| 7 | QB210840014B005 | 7 | 82 | Flowtite Pipe GRP for sliplining DN82 with Coupling PN001 SN46 L=7ft type SE | 1 | 46 | 7 | ft | 505.00 | 3,535.00 |

MAR-09-2006  12:21          AMITECH                    225 658 0947     P.09

| | | | | | |
|---|---|---|---|---|---|
| 8 | 12 | 82 | Flowtite Fitting GRP DN82 1-30 deg. Bend (Lay Length 7") | 1 | 46 | 98 | 4,694.73 | 56,736.76 |
| 8 | 1 | 82 | Flowtite Fitting GRP DN82 1-30 deg. Bend (Lay Length 11") | 1 | 46 | 98 | 5,998.07 | 6,996.07 |
| 10 | 8 | 54 | Flowtite Fitting GRP DN54 1-30 deg. Bend (Lay Length 6") | 1 | 46 | 98 | 2,656.60 | 21,252.60 |

Pipe Total      $1,623,954.63

Special Discount      $-(70,000)

$1,453,954.63

**PRICE CALCULATION:**

1. F.O.B. – Plant, Zachary, LA: Pick pipe up at the plant, buyer to unload.
2. The items quoted above are not for separate acceptance. Changes to the above items and quantities require revised unit prices.
3. Seller to nest pipe and load buyers truck.

**TERMS OF PAYMENT:**

Terms - Net 30 calendar days from the date of invoice. In the case that the Buyer pays within 14 days from the date of invoice, the unit prices will be reduced by 1-½% (one and the half percent). Interest on late payments at 1-½% (one and the half percent) each month.
Condition of Sale on last pages ("Amitech USA, LLC Terms and Conditions of Sale – 84" RCP Interceptor Rehabilitation Phase Project").

**OFFERS VALID THRU:**

This proposal expires in 10 days.

**DELIVERY DATES:**

1. Delivery schedule to be mutually agreed upon at receipt of signed purchase order. Final delivery schedule has to be confirmed in writing by Supplier (Amitech USA, LLC). Buyer must accept all of the products within 60 days of the first delivery stated on the mutually agreed delivery schedule.
2. The prices for deliveries exceeding (90) days are subject to adjustment.

**NOTES:**

1. All GRP Pipe material meets or exceeds the requirements of ASTM D 3282, D 3517, or D 3754.
2. All GRP joints (couplings) meet or exceed the requirements of ASTM D 4161.
3. "Type" in column Description, means:
   - "Type SE" – Flowtite pipe for SEWER NON PRESSURE application
   - "Type SP" – Flowtite pipe for SEWER PRESSURE application
   - "Type WP" – Flowtite pipe for POTABLE WATER and other PRESSURE application
   - "Type BX" – Flowtite BIAXIAL pipe for pressure application
   - "Type VE" – Flowtite pipe for SPECIAL application
4. Lay lengths are shown to be within 1 foot of actual, for bends only.

C:\Documents and Settings\zacher\Desktop\McGukspzroom-0406-0057-4.bh.doc

McGuk-hpcom-0406-0057-4.bh

Page : 2/5

MAR-09-2006  12:21        AMITECH                    225 658 0947    P.10

**STANDARD ITEMS:**    Unless specifically stated otherwise, the items quoted above refer to standard items listed in Amitech USA's "Flowtite GRP Pipe Systems Product Guide".

**ACKNOWLEDGEMENTS:**    Seller acknowledges that the pipe outlined on this quotation meets the signed and approved Submittal #4 dated October 5, 2005 (see attached Submittal #4 dated October 5, 2005)

**SPECIAL REQUIREMENTS AND TESTING:**    Amitech USA conditions letter dated February 9, 2006 as attached.

This quotation and the acceptance thereof by Buyer, the supply and delivery of Amitech USA, goods and services and the subsequent acceptance and/or receipt of their goods and services are subject to Amitech USA, LLC Terms and Conditions of Sale ("Amitech TCS"), a summary of which is attached hereto as an integrated part of this Quotation. Amitech TCS shall govern the contract of sale between supplier Amitech USA and Buyer in respect of the Quotation, save and except where Amitech has expressly and specifically agreed, in writing, to any modification or addition thereto.

**Accepted by Buyer:**                    **Amitech USA LLC**

Name: _____

Title: _____        Brad D Brousard
                                         (signature)

Company: _____

Date: _____

Name  _James W. Ebert_

Title  _President_

Company  _J. W. Ebert Corp._

Date  _3.9.06_

AMITECH USA, LLC

**TERMS AND CONDITIONS OF SALE – 64" RCP Interceptor Rehabilitation Phase Project**

**1. ENTIRE AGREEMENT.** The provisions on the face hereof and these Terms and Conditions of Sale constitute the entire agreement between Amitech USA, LLC ("Amitech") and the Buyer and supersede Buyer's purchase order and all other prior communications between the parties, whether written or oral. Any term in any future communication from Buyer containing additional or contrary terms are rejected, unless accepted in writing by an authorized representative of Amitech.

**2. ACCEPTANCE.** No order is effective until accepted by Amitech.

**3. PRICES.** Price quotes are effective so long as they are accepted within 10 days of the quote and the requested shipment date is within 90 days of the quote. Otherwise, the products will be invoiced to Buyer at Amitech's prices in effect at the time of shipment. Prices may be adjusted, under any circumstances, to reflect the cost of any survey, payment or performance bonds Amitech may be required to obtain and any shipping costs in excess of those contemplated at the time of the quote was issued.

**4. WARRANTY.** Amitech warrants that its products meet its published product specifications in effect at the time of manufacture. Amitech's specifications represent typical values obtained in accordance with ASTM testing methods. This warranty does not cover damage in shipment. Amitech warrants its pipe for a 10 month period based on delivery date.

Warranty of defect claims must be received by Amitech within 30 days after discovery or within 10 months of shipment, whichever is earlier. Buyer's sole recourse for breach of the warranty is either (a) repair of the defective products, (b) replacement of defective products with conforming products, F.O.B. Amitech's plant in Zachary, Louisiana, or (c) the return of purchase price, at Amitech's sole discretion. Short count claims must be made in writing 7 days of receipt of the products. Amitech may require verification of any such claim. Defective goods should be shipped to Amitech, freight prepaid, but only after prior written approval by an authorized Amitech Manager. Claims that are not made within the applicable claim period are deemed waived.

This limited warranty covers normal use. Amitech does not warrant and is not responsible for: (a) damage caused by: (b) damage caused by or during installation or operating environment for the products; (c) damage caused by any accidental; (d) damage caused by any disaster such as fire, flood, wind, earthquake, or lightning; (e) damage caused by unauthorized modifications of foreign objects; (f) damage caused by the use of the products for purposes other than those for which they are designed; (g) damage caused by combination with any other products; (h) any other abuse, misuse, relabeling or misapplication. Furthermore, this limited warranty shall not apply to any products or parts of products which have been repaired or altered outside of Amitech's factory, in any manner.

ALL TECHNICAL ADVICE, RECOMMENDATIONS, AND SERVICES OF AMITECH ARE INTENDED FOR USE BY PERSONS HAVING SKILL, AT THEIR OWN RISK, AND AMITECH ASSUMES NO RESPONSIBILITY, AND BUYER HEREBY WAIVES ALL CLAIMS AGAINST AMITECH, FOR RESULTS OBTAINED FROM THE USE OF AMITECH'S ADVICE, RECOMMENDATIONS, AND SERVICES. UNLESS OTHERWISE AGREED IN WRITING, AMITECH MAKES NO FURTHER WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, RELATING TO THE PRODUCT, WHETHER USED ALONE OR IN COMBINATION WITH OTHER MATERIALS.

**5. DAMAGES.** BUYER AND SELLER SHALL BE RESPONSIBLE FOR THEIR OWN ACTIONS.

**6. DELAY AND NON-DELIVERY REMEDY.** Amitech will use reasonable efforts to meet any shipment or delivery dates specified by it, but those dates are estimates only. Amitech will notify the Buyer if a shipment or delivery date will not be met and, if possible, the time when delivery can be expected. In the event Buyer delays receipt of a shipment, Buyer, as of the date that is more than 5 days after the estimated shipment or delivery date, a charge of % of the purchase price per day will be added to any such delayed shipment. This is the products and risk of loss passes to Buyer upon the commencement date of such additional charges.

**7. FORCE MAJEURE.** In the event of war, insurrection, riot, fire, flood or other casualty causing condition, explosion, act of God, peril of the sea, strike, labor dispute, lockout or other industrial disturbance, sabotage, accident, embargo, breakage of machinery or apparatus, injunction, act of governmental authority, compliance with governmental order or national defense requirements, inability to obtain or shortages of fuel, power, raw materials, labor, containers or transportation facilities, or any other circumstances beyond Amitech's control, Amitech may upon reasonable and prompt notice to Buyer, suspend deliveries for the period during which such conditions prevail.

**8. SHIPPING TERMS.** Unless otherwise provided by Buyer, and except as herein provided, at prices per F.O.B. Buyers designated delivery site. These shipping terms apply only on single order to one destination within the continental United States. Excess charges incurred, through special routings, at Buyer's request will be charged to Buyer. Method and route of shipment are at Amitech's discretion, unless the Buyer supplies explicit instructions. All shipments are insured at the Buyer's expense and made at the Buyer's risk. Title to the products passes to Buyer upon delivery to the carrier and risk of loss passes to Buyer upon delivery.

**9. CARRIER LOSS AND DAMAGE REMEDY.** If any of the goods specified are in carrier's delivery receipt are short or damaged, Buyer should not accept them or sign the receipt until the carrier agent makes a shortage or damage notation on the receipt. If concealed loss or damage is discovered, Buyer must contact the delivering carrier at once and request an inspection. In either event, Buyer must notify Amitech immediately of such damage or shortage.

**10. WAIVER.** Waiver by Amitech of any provision of this Agreement shall not be deemed as a waiver of and each provision hereunder, shall remain in full force and effect.

**11. APPLICABLE LAW AND JURISDICTION.** The terms and conditions of sale are subject to and will be construed in accordance with the substantive laws of the State of Louisiana, exclusive of the conflicts of law principles, Amitech and Buyer expressly waive their right to a trial by jury with respect to any dispute arising under or pursuant to this Agreement shall be in the Court of East Baton Rouge Parish, Baton Rouge, LA except in the event that Amitech, in its sole discretion, elects to seek any dispute hereunder to be adjudicated by binding arbitration. In that event, each of the parties hereto shall select one arbitrator, and the two thus selected shall select a third, which three arbitrators shall hear and determine the dispute between the parties.

**12. SAVINGS.** In the event that any provision in this purchase order contract is deemed by a court of competent jurisdiction in a controversy arising under this purchase order contract to be unenforceable under either state or federal law, then that provision shall be adjusted to the minimum extent required to comply with either law.

**13. RETURNED MATERIAL.** In no case are goods to be returned without first obtaining Amitech's permission. Only unused material as currently manufactured, which has been invoiced to Buyer within days, will be considered for return. Material accepted for credit is subject to a minimum service charge of % plus all transportation charges. Product built to order is not subject to return for credit under any circumstances. Goods must be securely packed to reach Amitech without damage.

McGulk-Inozen-0405-00574 th

Page : 4/5

MAR-09-2006  12:21        AMITECH                                    225 658 0947    P.12

**14. PATENTS.** Amitech agrees to defend any suit brought against a Buyer so far as it is based on a claim that any product or any part thereof in the particular form sold by Amitech infringes a United States patent, but only on condition that the Buyer shall promptly notify Amitech in writing of any such claim, and shall give Amitech full authority for the conduct of such suit, and shall render to Amitech (at its expense) whatever information and assistance may be reasonable required for such defense. Upon such conditions, Amitech shall pay damages and costs, if any, awarded against Buyer in such suit, and in case the product, or any part thereof, is held to infringe and the use of the product is enjoined, Amitech shall have the option at its own expense of procuring for the Buyer the right to continue using the product, replacing the same with a non infringing product, modifying the same so as to avoid infringement, or removing it and refunding the purchase price. The foregoing states Amitech's entire liability for patent infringement. Buyer shall indemnify Amitech and hold it harmless from and against any expenses or loss resulting from infringement of patents or trademarks arising from compliance with Buyer's designs or specifications.

**15. ASSIGNMENT.** Buyer is prohibited from assigning or delegating any right or duty without Amitech's prior written consent.

**16. CANCELLATION CHARGES.** Buyer is prohibited from canceling this order unless Amitech agrees in writing to a cancellation charge that takes into account work completed and material used, together with all incidental or consequential damages incurred as a result of such cancellation, less any sales recoverable from the disposal of such products.

**17. TERMS OF PAYMENT.** If the financial condition of Buyer becomes unsatisfactory to Amitech, or Buyer is in default to Amitech under any other order, Amitech may require payment in cash before shipment of the products. Any open account balance outstanding beyond Amitech's statement terms are subject interest at the highest rate allowed by law or 1-1/2% each month based on the arrears unpaid balance. If payments by Buyer are overdue on more than one, consider within a period of consecutive months, Amitech may require payment by certified check, or letter of credit, or bank wire transfer as a condition to further shipments. Amitech reserves the right to withhold shipments if any payment is more than ___ days past due. If in Amitech's opinion the financial condition of the buyer at any time does not justify continuance of production or shipment on the terms of payment specified, Amitech may require full or partial payment in advance. All payments hall be in United States Dollars unless otherwise specified by Amitech.

**18. TAXES.** Prices specified herein do not include any federal, state or municipal sales, use, excise or other taxes. Therefore, in addition to the price specified herein, the amount of any such sales, use, excise or other taxes applicable to the sale of the products covered hereunder shall be paid by Buyer or in lieu thereof Buyer shall furnish Amitech with tax-exemption certificates acceptable to said taxing authorities.

**19. ATTORNEYS FEES.** In the event of any controversy, claim or action being filed between the parties respecting this purchase order contract, prevailing party shall be entitled, in addition to all expenses, costs and damages, to reasonable attorney's fees.

C:\Documents and Settings\bccm\Desktop\McGoh\bccm-0404-0057-4h.doc

**TOTAL P.12**