STEVEN J. ROTH (State Bar No. 77963)
EDWARD A. KRAUS (State Bar No. 162043)
Reed & Roth
333 W. San Carlos St. #1600
San Jose, CA 95110
Telephone: (408) 993-9911
Fax: (408) 993-1335

Attorneys for Plaintiff,
J. W. EBERT CORPORATION, a California Corporation

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| J. W. EBERT CORPORATION, a California Corporation<br><br>Plaintiff,<br><br>vs.<br><br>AMITECH USA, LTD.<br><br>and DOES 1-100,<br><br>Defendants. | Case No. 107CV094997<br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE, BREACH OF CONTRACT, BREACH OF WARRANTIES, BREACH OF IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY, IMPLIED INDEMNITY AND DECLARATORY RELIEF** |

Plaintiff hereby alleges as follows:

### PRELIMINARY ALLEGATIONS

1.   Plaintiff, J. W. EBERT CORPORATION is a California Corporation authorized to do business in the State of California, and at all times pertinent hereto it was a fully licensed and insured general engineering contractor (Class A) and also a sanitation system contractor (Class C42).

2.   Plaintiff is informed and believes, and thereon alleges, that at all times pertinent hereto, Defendant AMITECH USA, LTD. Was, and is, an entity of unknown type that was doing business in and under the laws of the State of California as a seller of commercial Flowtite Pipe that was

C:\WORD PERFECT\data\disks\Ebert, Jim\Amended Complaint.doc

1

FIRST AMENDED COMPLAINT FOR DAMAGES

1   designed and manufactured by Defendant AMITECH USA, Ltd. and delivered to Plaintiff pursuant

2   to the terms of a written agreement dated 3/9/06 between plaintiff and defendant AMITECH USA,

3   Ltd. (Copy attached as Exhibit A)

4      3.   The contract was entered into in California and it provides the sale of Flowtite Pipe for use

5   by Plaintiff in competing a construction contract with the City of San Jose for retrofitting

6   underground sewer pipe in Santa Clara County. The failure of the pipe caused damages in Santa

7   Clara County, California.

8      4.   Plaintiff is informed and believes, and thereon alleges, that Defendants DOES 1 through

9   100 are business entities of a form unknown to Plaintiff, duly authorized to do business and doing

10   business within the State of California.

11      5.   Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1

12   through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will

13   amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is

14   informed and believes, and thereon alleges, that each of said fictitiously named Defendants is in

15   some manner responsible for the occurrences herein alleged, and that Plaintiff's damages as herein

16   alleged were proximately caused by said defendants.

17      6.   Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein,

18   each of the defendants was the agent, and/or employee of each of the remaining defendants, and in

19   doing the things hereinafter alleged, was acting within the scope of such agency and/or

20   employment, and that each defendant ratified and approved the acts of each of the remaining

21   defendants.

22      7.   Plaintiff is informed and believes, and thereon alleges, that Plaintiff's damages exceed the

23   minimum jurisdictional amounts of this Court.

24      8.   The defects and damages alleged herein related to the Flowtite pipe manufactured by

25   defendant AMITECH USA, Ltd. were discovered on or about October 23, 2006.

26   /

27   /

28   /

# FIRST CAUSE OF ACTION

## NEGLIGENCE IN DESIGN AND MANUFACTURE

9.   Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and incorporates them by reference as though fully set forth at length herein.

10.   As hereinabove alleged, Defendant AMITECH USA, Ltd., at all times relevant hereto engaged in the business of designing and manufacturing, among other products, Flowtite pipe, including the pipe sold to Plaintiff and used by Plaintiff in a contract with the City of San Jose.

11.   Defendant intended that the Flowtite Pipe manufactured and delivered by Defendant be used by contractors such as Plaintiff in fulfilling construction contracts for the construction of sewer projects and that such contractors would use the pipe without inspection for interior defects.

12.   At the time the Flowtite pipe was purchased and installed by Plaintiff the Flowtite pipe was defective and unsuited for its intended purpose and did not perform its stated purpose of containing liquids as sewer pipes.

13.   The joints between the Flowtite pipes leaked as a result of defective design and manufacture by Defendant. The steel joints to the Flowtite pipes failed. These failures caused the pipes to leak at the joints.

14.   Several means of correcting the leaks were pursued by Plaintiff with the advice and consent of Defendant, and none corrected the problem.

15.   As a proximate result of the defects in design and manufacture of the Flowtite pipes by Defendant, Plaintiff has suffered damages in an amount to be shown according to proof at trial, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

/

/

# SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

16.  Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and the First Cause of Action and incorporates them by reference as though fully set forth at length herein.

17.  Defendant entered into a agreement with Plaintiff for the manufacture of Flowtite pipes to be delivered by Defendant to Plaintiff.

18.  Under the terms of the written agreement, Defendant was obligated to provide leak-proof Flowtite pipes to Plaintiff for use by Plaintiff in completing Plaintiff's contract obligations under a contract between Plaintiff and the City of San Jose.

19.  Under the terms of the agreement, Defendant was obligated to provide Flowtite pipes free from material defects, and adequate for their intended purpose.

20.  Plaintiff has fully and completely performed all of the terms, conditions, covenants, and promises of the contracts on its part to be performed, all conditions precedent to performance on the part of Defendant have occurred, and Plaintiff has demanded performance from Defendant.

21.  Defendant breached the terms of its agreement by, among other things, failing to properly design and manufacture the Flowtite pipe delivered to Plaintiff and by failing to properly insure that the pipe and its joints did not leak.

22.  Defendant breached its agreement and thereby caused Plaintiff to suffer additional costs of correcting the defects and to incur overhead charges under Plaintiff's contract with the City of San Jose by failing to meet the agreed upon delivery schedule for the Flowtite pipe's delivery to Plaintiff.

23.  As a proximate result of the breach of contract by Defendant, Plaintiff has suffered damages in an amount to be shown according to proof at trial, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION
## BREACH OF WARRANTY

24. Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and the First and Second Causes of Action and incorporates them by reference as though fully set forth at length herein.

25. As alleged, Defendant entered into a written agreement with Plaintiff, one term of which is an 18 month warranty period.

26. Defendant's Flowtite pipes are defective in that the joints between the pipes, and specifically the collars affixed to the pipes by Defendant will not hold water.

27. Defendant has been given notice of the breach and has declined to make further efforts to fix the problem, several proposed corrections already having failed to cure the problem with the steel collars.

28. As a proximate result of the breach of contract by Defendant, Plaintiff has suffered damages in an amount to be shown according to proof at trial, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY

29. Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and the First through Third Causes of Action, inclusive, and incorporates them by reference as though fully set forth at length herein.

30. As alleged above, Defendant entered into a written contract to provide Flowtite pipe to

1  Plaintiff for use in a contract with the City of San Jose.

2      31.   Defendant impliedly warranted that the Flowtite pipe provided by Defendant would be of

3  merchantable quality and reasonably fit for their intended purpose and that the design and

4  manufacture related thereto would be done in a careful and workmanlike manner, to produce

5  reasonably water-tight pipe joints that would not leak.

6      32.   Plaintiff was in privity with Defendant.

7      33.   The above-referenced warranties provided by Defendant have been breached in that the

8  materials, workmanship, and labor were not performed as reasonably intended to allow for the leak

9  proof integrity of the Flowtite pipe joints, including but not limited to the improper application of

10  epoxy intended to secure the steel collars to the Flowtite pipe such that the pipe joints would remain

11  water tight. When tested for their intended use, the joints fail.

12      34.   Notice of the breach has been give  to Defendant.

13      35.   As a proximate result of the breach of contract by Defendant, Plaintiff has suffered

14  damages in an amount to be shown according to proof at trial, including but not limited to monetary

15  damages due to repair and replacement of seals made necessary by defective pipe joints, overhead,

16  labor and expenses related to corrective work undertaken by Plaintiff, additional legal and

17  professional costs and other incidental and consequential damages.

18      WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

19

20  **FIFTH CAUSE OF ACTION**

21  **IMPLIED INDEMNITY**

22      36.   Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations

23  and First through Fourth Causes of Action, inclusive, and incorporated them by reference as though

24  fully set forth at length herein.

25      37.   Plaintiff is incurring attorney's fees, court costs, investigative costs and other costs in

26  connection with Plaintiff's continuing attempts to correct the defects in Defendant's Flowtite pipe in

27  order to mitigate any damages to be suffered under Plaintiff's contract with the City of San Jose, the

28  exact amount of which is unknown at this time.

38.   To the extent that Plaintiff has incurred, or will incur, costs, expenses and damages related to Plaintiff's contract with the City of San Jose, that liability will be solely due to Defendant's negligent faulty design and manufacture of Flowtite pipe. Defendant will therefore be liable and bound to pay to Plaintiff all or a portion of any and all damages which have been incurred tod and also those that might be adjudged to be due and owing to the City of San Jose against Plaintiff.

39.   To the extent that Plaintiff has incurred, or will incur costs, expenses and damages related to Plaintiff's contract with the City of San Jose, that liability is vicarious only and is the direct and proximate result of Defendant's negligent faulty design and manufacture of Flowtite pipe. Therefore, Plaintiff is entitled to be indemnified by Defendant to the extent of all of such liability.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION
## DECLARATORY RELIEF

40.   Plaintiff hereby refers to and realleges all the Paragraphs of the Preliminary Allegations and First through Fifth Causes of Action, inclusive, and incorporated them by reference as though fully set forth at length herein.

41.   A controversy currently exists between the parties concerning the written agreement between them. The agreement is silent as to whether or not Plaintiff is within its rights to withhold a portion of the payment claimed by Defendant for providing Flowtite pipe to Plaintiff.

42.   Plaintiff claims a right of set off to protect it from injury caused by Defendant, including but not limited to monetary damages due to repair and replacement of seals made necessary by defective pipe joints, overhead, labor and expenses related to corrective work undertaken by Plaintiff, additional legal and professional costs and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

/
/
/
/

# PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

AS TO THE FIRST THROUGH THE FOURTH CAUSE OF ACTION;

1.  Compensatory damages according to proof;

2.  Monetary damage due to repair and replacement of damaged pipe seals and other damaged property and materials of construction;

3.  Monetary damage due to testing, investigation and professional consultation;

4.  Monetary damage due to liquidated damages to the City of San Jose;

5.  Consequential damages according to proof;

6.  For attorneys fees, costs, and litigation expenses incurred herein;

7.  For such other and further relief as the Court may deem just and proper.

AS TO THE FIFTH CAUSE OF ACTION;

8.  Compensatory damages according to proof;

9.  Monetary damage due to repair and replacement of damaged pipe seals and other damaged property and materials of construction;

10. Monetary damage due to testing, investigation and professional consultation;

11. Monetary damage due to liquidated damages to the City of San Jose;

12. Consequential damages according to proof;

13. For attorneys fees, costs, and litigation expenses incurred herein;

14. For a declaration of this Court that Plaintiff is entitled to be indemnified and held harmless by Defendants, for the full amount of damages, costs and expenses, incurred by Plaintiff as a result of Defendant's negligent design and manufacture of the Flowtite pipe sold by Defendant to Plaintiff;

15. For such other and further relief as the Court may deem just and proper.

AS TO THE SIXTH CAUSE OF ACTION;

16. For a declaration of this Court that Plaintiff is entitled to retain amounts claimed by Defendant as a set off pending resolution of the rights and claims of the parties at trial, in the full amount currently being held by Plaintiff, and

17. For such other and further relief as the Court may deem just and proper.

DATED: 11/15/2007                                REED & ROTH

By:     Steven J. Roth
        Attorney for Plaintiff
        J. W. Ebert Corporation

*AMIANTIT*

TECH

Amitech USA, LLC

18585 Samuels Road
Zachary, LA 70791, USA

Helpdesk:  + 1 225 658 6166
Direct:    + 1 (225) 658 2706
Fax:       + 1 225 658 0947
Mobile:    + 1 (225) 413 6089

rgaude@amitechusa.com
www.amitechusa.com

Estimating Fax: 510-562-5210

March 8, 2006

McGuire Hester
Attention: Mr. Mike Hester
9009 Railroad Avenue
Oakland, CA 94603

Date:      3/8/2006
Ref:       San Jose Slip-Lining
Your Date: 3/3/06
Your Ref:  "84 San Jose

RE: "84 RCP Interceptor Rehabilitation Phase

Dear Mr. Hester

We are in receipt of your fax dated March 3, 2006. We have concerns regarding the language under "Acknowledgements" and have rewritten the clause that should be favorable to both parties. It reads, "Seller acknowledges that the pipe outlined on this quotation meets the signed and approved Submittal #4 dated October 5, 2005 (see attached Submittal #4 dated October 5, 2005). Below the "Acknowledgements" included "Amitech USA conditions letter dated Feb 9, 2006 as attached." Also, under Price Calculations, we have included item #3, "Seller to nest pipe and load buyers truck." Last, under Notes, we revised wording to read, "Lay lengths to be within 1 foot of actual, for bends only."

I noticed on your fax correspondence the description "Ebert / M&H JV ..." Can you clarify who my company will invoice for this this project?

We look forward to working with you on this project. With your signatures, we can proceed to confirm your order.

With best regards,

Amitech USA, LLC

Raymond Gaude
Customer Service Manager

CC: James W. Ebert (408) 287-4576

Attachments: Quotation No: 0405-0057-4

\\Aello01\cms2leo_jMGRGAU\2006.1\McGuir-Amrca.doc

A Member of the *AMIANTIT* Group



**GENERAL ENGINEERING CONTRACTOR**
LIC. #473987

March 2, 2006

Mike Hester, President                    **11 Page Fax Only**
McGuire and Hester
9009 Railroad Ave
Oakland, CA  94603

mhester@mcguireandhester.com
(510) 632-7676 phone
(510) 562-5210 fax

Re:   City of San Jose 54-Inch RCP Sewer Rehabilitation Phase VIB
      Pipe Purchase Order

Dear Mr. Hester,

Attached please find the Amitech pipe purchase order document.  I am in agreement with the terms and
conditions in the marked up document and I have signed it for Ebert Corp.  Please finalize the document by
reviewing as you feel necessary and signing where appropriate.  The document should be faxed to:

Maciej Korbasiewicz,
Amitech USA
225-658-0947 fax

My e-mail is down as SBC is switching us to a fiber line, so if you want to discuss this please give me a call on
the cell phone 408-640-2280.

Sincerely,

J.W. Ebert Corp.

James W. Ebert
*President*

McGuire Hester- Mike Hester Pipe PO.doc.doc
      J.W. Ebert Corp.  •  1620 South Seventh Street  •  San Jose, CA 95112-5931
      (408) 297-1031         •         www.ebertcorp.com         •         FAX (408) 287-4576

**AMIANTIT**

**AMITECH**

Amitech USA, LLC

15885 Hollister Road
Zachary, LA 70791, USA

Helpdesk  + 1 225 658 0100
Fax       + 1 225 658 0947

www.profinishusa.com

J.W. Ebert Corporation
Attn: Jim Ebert
1620 South 7th
San Jose, CA 95112

February 9, 2006

Dear Mr. Ebert,

Please find modifications as we agreed:

- Prices are agreed as in the attached quotation. If additional pipe is ordered after initial order/confirmation buyer will pay new price. (See Quotation No: 8405-0057-4, Date: 2/2/06)

- Amitech USA agrees to warranty its pipe for an 18-month period based on delivery date. (See Terms and Conditions of Sale — 84" RCP Interceptor Rehabilitation Phase Project, Subpart 4. Warranty)

- Seller and Buyer shall be responsible for their own actions. (See Terms and Conditions of Sale — 84" RCP Interceptor Rehabilitation Phase Project, Subpart 5. Damages)

After the test trials with the mandrels, please confirm dimensions so we can confirm delivery schedule.

Our quote is attached for your approval. With your signature, we can place this order into the production schedule enabling us to start procuring supplies necessary for the manufacture of the pipe. Delays in signed approval will affect the delivery schedule in which we are not responsible.

Thanks again and we look forward to a very successful business venture together.

With regards,

Maciej Korbelewicz
Managing Director

Cc: Bill Harrel
    Raymond Gaudé

Case 5:07-cv-06492-JW  Document 16-2  Filed 02/25/2008  Page 13 of 21

# CONTRACTOR SUBMITTAL SUMMARY

FILE NO.: 3548-36

PROJECT NAME: 84" RCP Interceptor Rehabilitation Ph VIB

| CONTRACTOR: Ebert/McGuire and Hester<br>1520 South Seventh Street<br>San Jose, CA 95112<br><br>ATTN: Jim Ebert | SUBMITTAL NO.   38 |
|---|---|
| | 1ST☐   2ND☐   3RD■   4TH☐ |
| | DATE RECEIVED: 1/11/06 |
| | DATE RETURNED: 1/12/06 |

| CONTR. SUBMITTAL NO.: 05-100-38 | | | REVIEW ACTION | | | |
|---|---|---|---|---|---|---|
| ITEM:                    Segmented Slipliner Pipe<br>SPEC. SEC./PAGE NO.:      1502-1 / Page 54<br>SUPPLIER/SUBCONTR.:        Amitech<br><br><br>DETAILED DESCRIPTION | NO. COPIES RECEIVED | NO EXCEPTIONS OBSERVED | MAKE CORRECTIONS NOTED | REVISE AS NOTED AND RESUBMIT | REJECT - RESUBMIT | NO. COPIES RETURNED |
| 1. Segmented Slipliner Pipe | 5 | X | | | | 3 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

REMARKS:

   1. Once host pipeline conditions are evaluated contractor shall submit a revised shop drawing and lay schedule.

Case 5:07-cv-06492-JW   Document 16-2   Filed 02/25/2008   Page 14 of 21



# Submittal #4

**Project:**   84" RCP Interceptor Rehabilitation Phase
San Jose, CA

**Contractor:**   J.W. Ebert Corporation
1620 South 7th
San Jose, CA 95112

**Submitted by:**   Amitech USA, Ltd.
18585 Samuels Road
Zachary, LA 70791
Phone: (225) 658-6166
Fax:    (225) 658-0947

CITY OF SAN JOSE
DEPARTMENT OF PUBLIC WORKS

JAN 12 '06

Submittal was reviewed for
general conformance to Contract
Documents only. Contractor is res-
ponsible for confirming and cor-
relating full compliance with
Contract Documents. Notations do
not authorize changes to contract
amount.

☒ NO EXCEPTIONS OBSERVED
☐ MAKE CORRECTIONS NOTED
☐ REVISE AS NOTED AND
   RESUBMIT

October 5, 2005

Case 5:07-cv-06492-JW   Document 16-2   Filed 02/25/2008   Page 15 of 21

**AMIANTIT**

**AMITECH**

18585 Samuels Road
Zachary, LA 70791, USA

Phone:   (225) 658-6166
Fax:     (225) 658-0947

October 5, 2005

J.W. Ebert Corporation
Attn:  Jim Ebert
1620 South 7th
San Jose, CA 95112 USA

Re: 84" RCP Interceptor Rehabilitation Phase VI B

Dear Mr. Ebert:

Amitech USA has reviewed the project plans and specifications and hereby states the following:

Flowtite Pipe is manufactured in accordance with and meets and/or exceeds the requirements of the following ASTM Specifications:

- ASTM D3262    Standard specification for "fiberglass" (glass-fiber-reinforced thermosetting-resin) sewer pipe
- ASTM D4161    Standard specification for fiberglass pipe joints using flexible elastomeric seals
- ASTM F477     Standard specification for elastomeric seals (gaskets) for joining plastic pipe
- ASTM D2412    Standard test method for determination of external loading characteristics of plastic pipe by parallel plate loading.
- ASTM D2992    Practice for obtaining hydrostatic or pressure design basis for "fiberglass" (glass-fiber-reinforced thermosetting-resin) pipe and fittings
- ASTM D3567    Practice for determining dimensions of "fiberglass" (glass-fiber-reinforced thermosetting-resin) pipe and fittings
- ASTM D3681    Test method for chemical resistance of "fiberglass" (glass-fiber-reinforced-thermosetting-resin) in a deflected condition

The following notes are in response to your letter dated October 4, 2005:

1.  The attached slip line joint detail drawing provides the maximum outside diameter and minimum internal diameter as documented in the contract specifications. Upon completion of the proof testing of the existing line, Amitech USA will provide an updated slip line joint detail drawing with the final OD and ID dimensions.
2.  The maximum allowable grouting pressure for 46 psi stiffness Flowtite GRP pipe is 10 psi.
3.  Regarding our submittal of the minimum / maximum pipe lengths or diameters in association with the radii and wear of the existing pipeline, we have just received this information and will evaluate it and respond under separate transmittal. It is our intention to provide a lay schedule of the proposed alignment prior to production.

Please read the attached information and verify that it meets your project requirements. After you have read and accepted this package, please return this cover page signed and dated to verify your acceptance.

If you should have any questions or wish to discuss this information further, please do not hesitate to call.

Regards,

*Erica Chandler*

Erica Chandler
Inside Sales Coordinator

Cc:   Bill Harrell
      Dave Gallings

P:\Projects Directory\2005\San Jose – Slipline\Documents\Submittal 2\Cover Letter.doc

Case 5:07-cv-06492-JW   Document 16-2   Filed 02/25/2008   Page 16 of 21

| Nominal Diameter (in.) | SN | PN | Pipe ID (in.) | Pipe ID (mm) | Wall Thickness (in.) | Wall Thickness (mm) | Spigot Wall Thickness s (in.) | Spigot Wall Thickness s (mm) | Pipe OD (in.) | Pipe OD (mm) | Slip DOS (in.) | Slip DOS (mm) | Steel Sleeve ID (in.) | Steel Sleeve ID (mm) | Steel Sleeve Thickness (in.) | Steel Sleeve Thickness s (mm) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 54 | 46 | 50 | 54.286 | 1378.8 | 0.925 | 23.5 | 0.480 | 12.2 | 56.138 | 1428.9 | 55.645 | 1410.9 | 55.664 | 1413.9 | 0.157 | 4.0 |
| 78 | 46 | 50 | 78.390 | 1991.1 | 1.281 | 32.5 | 0.838 | 21.2 | 80.952 | 2056.2 | 80.361 | 2041.2 | 80.480 | 2044.2 | 0.157 | 4.0 |
| 82 | 46 | 50 | 82.434 | 2093.8 | 1.406 | 35.7 | 0.961 | 24.4 | 85.248 | 2166.2 | 84.655 | 2150.2 | 84.774 | 2153.2 | 0.157 | 4.0 |

NOTE:
1. DIMENSIONS OF PIPE TO REMAIN AS NOTED IN ACCORDANCE WITH AWWA C950 / AWWA 1 TYPE 1 GRADE 1
2. DIMENSIONS OF PIPE TO REMAIN AS NOTED IN ACCORDANCE WITH 60 DEG WIDE DIMENSIONS LISTED IN ACCORDANCE WITH PACKAGE SPECIFICATIONS

AMITECH
18685 Samuels Rd, Zachary, LA 70791
Tel. (225) 658-6166  Fax (225) 658-0947
www.810facilis.com

| | |
|---|---|
| Project: | |
| | Sun Aqua |
| | Slip Liner Joint Detail |

| Notes: Add detail per customer's (Contractor) request s | |
|---|---|
| Client: | |

| Date: | 1/11/03 |
| Drawing #: | 12-ANRS |
| Revision: | 1 |
| Drawn by: | GW |
| Scale: | NONE |
| Checked by: | JAB |
| Sheet: | 1 OF 1 |

Bidder:

J.W. Ebert Corp.

Attn: Jim Ebert

1620 South Seventh Street
San Jose, CA 95112

Phone (408) 287-1031
Fax (408) 287-4578

## JAMITECH
Amitech USA, LLC

18595 Samuels Road
Zachary, LA 70791, USA

Phone 225 658 6165
Fax 225 658 0947

www.amitechusa.com

**Date: 3/8/2006**

# QUOTATION NO: 0406-0057-4

**Project Name:** 84" RCP Interceptor Rehabilitation Phase
**Project Location:** San Jose, CA

For More Information Contact:   Amitech Regional Manager:
Bill Hamel
Phone: 714-381-2227
Fax: 225-658-0947
Email address: bhamel@amitechusa.com

Manufacturing Representative:
Dave Gellinga
Phone: 916-851-0889
Fax: 916-851-0890

Please disregard all previous quotations made for this project; this is the only valid quotation that Amitech USA will honor.
This quotation is only valid for 10 days.

| Item # | Stock code | QTY ft / pcs | Size [DN] | Description | Pressure Class (PN) | Stiffness Class (SN) | Pipe length [M] | Unit | Unit price [USD] | Value [USD] |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | QB21054001146020 | 200 | 54 | Flowtite Pipe GRP for slipining DN54 with Coupling PN001 SN46 L=20ft type SE | 1 | 46 | 20 | ft | 154.00 | 30,800.00 |
| 2 | QB21078001146020 | 1650 | 78 | Flowtite Pipe GRP for slipining DN78 with Coupling PN001 SN46 L=20ft type SE | 1 | 46 | 20 | ft | 278.30 | 459,224.00 |
| 3 | QB21084001146020 | 2740 | 82 | Flowtite Pipe GRP for slipining DN82 with Coupling PN001 SN46 L=20ft type SE | 1 | 46 | 20 | ft | 335.20 | 921,168.00 |
| 4 | QB21054001145010 | 10 | 54 | Flowtite Pipe GRP for slipining DN54 with Coupling PN001 SN46 L=10ft type SE | 1 | 46 | 10 | ft | 201.00 | 2,010.00 |
| 5 | QB21078001146010 | 10 | 78 | Flowtite Pipe GRP for slipining DN78 with Coupling PN001 SN46 L=10ft type SE | 1 | 46 | 10 | ft | 349.00 | 3,490.00 |
| 6 | QB21084001146010 | 20 | 82 | Flowtite Pipe GRP for slipining DN82 with Coupling PN001 SN46 L=10ft type SE | 1 | 46 | 10 | ft | 386.00 | 7,720.00 |
| 7 | QB21084001146005 | 7 | 82 | Flowtite Pipe GRP for slipining DN82 with Coupling PN001 SN46 L=7ft type SE | 1 | 46 | 7 | ft | 505.00 | 3,535.00 |

C:\Documents and Settings\bharrel\Desktop\McQui-kncm-0406-0057-4 bh.doc

McQui-kncm-0406-0057-4 bh

Page: 1/5

| 8 | 12 | 82 | Flowtite Fitting GRP DN82 1-30 deg. Bend (Lay Length 7") | 1 | 46 | 66 | 4,894.73 | 58,736.76 |
| 8 | 1 | 82 | Flowtite Fitting GRP DN82 1-30 deg. Bend (Lay Length 11") | 1 | 46 | 66 | 5,998.07 | 6,998.07 |
| 10 | 8 | 54 | Flowtite Fitting GRP DN54 1-30 deg. Bend (Lay Length 6") | 1 | 46 | 66 | 2,656.60 | 21,252.80 |

Pipe Total $1,523,954.63

Special Discount $-(70,000)

$1,453,954.63

**PRICE CALCULATION:**

1. F.O.B. – Plant, Zachary, LA: Pick pipe up at the plant, buyer to unload.
2. The items quoted above are not for separate acceptance. Changes to the above items and quantities require revised unit prices.
3. Seller to nest pipe and load buyers truck.

**TERMS OF PAYMENT:**

Terms - Net 30 calendar days from the date of invoice. In the case that the Buyer pays within 14 days from the date of Invoice, the unit prices will be reduced by 1-½% (one and the half percent). Interest on late payments at 1-½% (one and the half percent) each month.
Condition of Sale on last pages ("Amitech USA, LLC Terms and Conditions of Sale – 84" RCP Interceptor Rehabilitation Phase Project").

**OFFERS VALID THRU:**

This proposal expires in 10 days.

**DELIVERY DATES:**

1. Delivery schedule to be mutually agreed upon at receipt of signed purchase order. Final delivery schedule has to be confirmed in writing by Supplier (Amitech USA, LLC). Buyer must accept all of the products within 60 days of the first delivery stated on the mutually agreed delivery schedule.
2. The prices for deliveries exceeding (90) days are subject to adjustment.

**NOTES:**

1. All GRP Pipe material meets or exceeds the requirements of ASTM D 3262, D 3617, or D 3754.
2. All GRP joints (couplings) meet or exceed the requirements of ASTM D 4161.
3. "type" in column Description, means:
   - "type SE" – Flowtite pipe for SEWER NON PRESSURE application
   - "type SP" – Flowtite pipe for SEWER PRESSURE application
   - "type WP" – Flowtite pipe for POTABLE WATER and other PRESSURE application
   - "type BX" – Flowtite BIAXIAL pipe for pressure application
   - "type VE" – Flowtite pipe for SPECIAL application
4. Lay lengths are shown to be within 1 foot of actual, for bends only.

C:\Documents and Settings\bravford\Desktop\McGid-Incom-0406-0057-4.txt.doc

McGid-Incom-0406-0057-4 bh

Page : 2/5

**STANDARD ITEMS:** Unless specifically stated otherwise, the items quoted above refer to standard items listed in Amitech USA's "Flowtite GRP Pipe Systems Product Guide".

**ACKNOWLEDGEMENTS:** Seller acknowledges that the pipe outlined on this quotation meets the signed and approved Submittal #4 dated October 5, 2005 (see attached Submittal #4 dated October 5, 2005)

**SPECIAL REQUIREMENTS AND TESTINGS:** Amitech USA conditions letter dated February 8, 2006 as attached.

This quotation and the acceptance thereof by Buyer, the supply and delivery of Amitech USA, goods and services and the subsequent acceptance and/or receipt of their goods and services are subject to Amitech USA, LLC Terms and Conditions of Sale ("Amitech TCS"), a summary of which is attached hereto as an integrated part of this Quotation. Amitech TCS shall govern the contract of sale between supplier Amitech USA and Buyer in respect of the Quotation, save and except where Amitech has expressly and specifically agreed, in writing, to any modification or addition thereto.

**Amitech USA LLC**

Brad D. Broussard
_(signature)_

_(signature)_

**Accepted by Buyer:**

Name: James W. Ebert
Name James W. Ebert

Title: President
Title President

Company: J. W. Ebert Corp.
Company J. W. Ebert Corp.

Date: 3.9.06
Date 3.9.06

McGlJk-tncrn-0405-0057-4.bh

C:\Documents and Settings\kysten\Desktop\McGlJk-tncrn-0405-0057-4 bh.doc

Page : 5/5

Case 5:07-cv-06492-JW   Document 16-2   Filed 02/25/2008   Page 20 of 21

AMITECH USA, LLC
TERMS AND CONDITIONS OF SALE – IAP RCP Enterpriter Rehabilitation Phase Project

**1. ENTIRE AGREEMENT.** The provisions on the face hereof and these Terms and Conditions of Sale constitute the entire agreement between Amitech USA, LLC ("Amitech") and the Buyer and supersede Buyer's purchase order and all other prior communications between the parties, whether written or oral. Any term in any future communication from Buyer containing additional or contrary terms are rejected, unless accepted in writing by an authorized representative of Amitech.

**2. ACCEPTANCE.** No order is effective until accepted in writing by Amitech.

**3. PRICES.** Price quotes are effective so long as they are accepted within 30 days of the quote and the requested shipment date is within 90 days of the quote. Otherwise, the products will be invoiced to Buyer at Amitech's prices in effect at the time of shipment. Prices may be adjusted, under any circumstances, to reflect the cost of any surety, payment or performance bond Amitech may be required to obtain and any shipping costs in excess of those contemplated at the time of the quote was issued.

**4. WARRANTY.** Amitech warrants that its products meet its published product specifications in effect at the time of manufacture. Amitech's specifications represent typical values obtained in accordance with ASTM testing methods. This warranty does not cover damage in shipment. Amitech warrants its pipe for a 10 month period based on delivery date.

Warranty of defect claims must be received by Amitech within 18 months of delivery or within 30 days after discovery or within 18 months of shipment, whichever is earlier. Buyer's sole recourse for breach of this warranty is either (a) repair of the defective product; (b) replacement of defective products with conforming products. F.O.B. Amitech's plant in Zachary, Louisiana; or (c) the return of purchase price, at Amitech's sole discretion. Short count claims must be made in writing 7 days of receipt of the products. Amitech may require verification of any such claim. Defective goods should be shipped to Amitech, freight prepaid, but only after prior written approval by an authorized Amitech Manager. Claims that are not made within the applicable claims period are deemed waived.

This limited warranty covers normal use. Amitech does not warrant and is not responsible for: (a) damage caused by failure to provide a suitable installation or operating environment for the product; (b) damage caused by any accident; (c) damage caused by any disaster such as fire, flood, wind, earthquake, or lightning; (d) damage caused by unauthorized attachments, alterations, modifications or foreign objects; (e) damage caused by the use of the products for purposes other than those for which they are customarily used; (f) damage from improper installation or maintenance; or (g) damage caused by any other abuse, misuse, mishandling or misapplication. Furthermore, this limited warranty shall not apply to any products or parts of products which have been repaired or altered outside of Amitech's factory, in any manner.

ALL TECHNICAL ADVICE, RECOMMENDATIONS, AND SERVICES OF AMITECH ARE INTENDED FOR USE BY PERSONS HAVING SKILL, AT THEIR OWN RISK, AND AMITECH ASSUMES NO RESPONSIBILITY AND MAKES NO WARRANTY CONCERNING THE RESULTS TO BE OBTAINED FROM THE USE OF AMITECH'S ADVICE, RECOMMENDATIONS, AND SERVICES. UNLESS OTHERWISE BUYER HEREBY WAIVES ALL CLAIMS AGAINST AMITECH FOR RESULTS OBTAINED FROM THE USE OF AMITECH'S ADVICE, RECOMMENDATIONS, AND SERVICES, UNLESS OTHERWISE AGREED IN WRITING, AMITECH MAKES NO FURTHER WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, RELATING TO THE PRODUCT, WHETHER USED ALONE OR IN COMBINATION WITH OTHER MATERIALS.

**5. DAMAGES. BUYER AND SELLER SHALL BE RESPONSIBLE FOR THEIR OWN ACTIONS.**

**6. DELAY AND NON-DELIVERY REMEDY.** Amitech will use reasonable efforts to meet any estimated or delivery dates specified by it, but those dates are estimates only. Amitech will notify the Buyer if a shipment or delivery date will not be met and, if possible, the time when delivery can be expected. In the event Buyer delays receipt of a shipment, then, as of the date that is more than days after the estimated shipment or delivery date, a charge of % of the purchase price per day will be added to any such delayed shipment. Title to the products and risk of loss passes to Buyer upon the commencement date of such additional charges.

**7. FORCE MAJEURE.** In the event of war, insurrection, riot, fire, flood or other unusual weather condition, explosion, act of God, peril of the sea, strike, labor dispute, lockout or other industrial disturbance, sabotage, accident, embargo, breakage of machinery or apparatus, injunction, act of governmental authority, compliance with governmental order or national defense requirements, inability to obtain or shortages of fuel, power, raw materials, labor, containers or transportation facilities, or any other circumstance beyond contraction therewith, Amitech may upon reasonable and prompt notice to Buyer, suspend deliveries for the period during which such condition prevail.

**8. SHIPPING TERMS.** Unless transportation is provided by Buyer, and except as hereinafter provided, all orders are F.O.B Buyers designated delivery site. These shipping terms apply only on single shipments of a single order to one destination within the continental United States. Excess charge for special routings, if Buyer's request will be charged to Buyer. Method and route of shipment are at Amitech's discretion, unless the Buyer supplies explicit instructions. All shipments are insured at the Buyer's risk. Title to the products passes to Buyer upon delivery to the carrier and risk of loss passes to Buyer upon delivery.

**9. CARRIER LOSS AND DAMAGE REMEDY.** If any of the goods specified on the carrier's delivery receipt are short or damaged, Buyer should not accept them or sign the receipt until the carrier agent makes a shortage or damage notation on the receipt. If concealed loss or damage is discovered, Buyer must contact the delivering carrier at once and request an inspection. In either event, Buyer must notify Amitech immediately of such damage or shortage.

**10. WAIVER.** Waiver by Amitech of any provision of this Agreement shall not be deemed as a waiver of any such provision hereunder, shall remain in full force and effect.

**11. APPLICABLE LAW AND JURISDICTION.** The terms and conditions of sale are subject to and will be construed in accordance with the substantive laws of the State of Louisiana, exclusive of its conflicts of law principals. Amitech and Buyer expressly agree that original jurisdiction of any dispute arising under or pursuant to the Agreement shall lie in the Court of East Baton Rouge Parish, Baton Rouge, LA except in the event that Amitech, in its sole discretion, elects to cause any dispute hereunder to be adjudicated by binding arbitration. In that event, each of the parties hereto shall select one arbitrator, and the two thus selected shall select a third, which three arbitrators shall hear and determine the dispute between the parties.

**12. SAVINGS.** In the event that any provision in this purchase order contract is deemed by a court of competent jurisdiction in a controversy arising under this purchase order contract to be controvensible under either sale or federal law, then that provision shall be adjusted to the minimum extent required to comply with state law.

**13. RETURNED MATERIAL.** In no case are goods to be returned without first obtaining Amitech's permission. Only unused material as currently manufactured, which has been invoiced to Buyer within days, will be considered for return. Material accepted for credit is subject to a minimum service charge of % plus all transportation charges. Product built to order is not subject to return for credit under any circumstances. Goods must be securely packed to reach Amitech without damage.

C:\Documents and Settings\bonden\Desktop\McGukIncom-0405-0037-4 bn.doc

14. PATENTS. Amitech agrees to defend any suit brought against a Buyer so far as it is based on a claim that any product of any part thereof in the particular form sold by Amitech infringes a United States patent, but only on condition that the Buyer shall promptly notify Amitech in writing of any such claim, and shall give Amitech full authority for the conduct of such suit and shall render to Amitech (at its expense) whatever information and assistance may be reasonable required for said defense. Upon such conditions, Amitech shall pay damages and costs. If any product against Buyer as such suit, and in case the product, or any part thereof, is held to infringe and the use (of the product or part is enjoined, Amitech shall have the option of procuring for Buyer the right to continue using the product, replacing the same with a non-infringing product, modifying the same so as to avoid infringement, or removing it and refunding the purchase price. The foregoing states Amitech's entire liability for patent infringement. Buyer shall indemnify Amitech and hold it harmless from and against any expense or loss resulting from infringement of patents or trademarks arising from compliance with Buyer's designs or specifications.

15. ASSIGNMENT. Buyer is prohibited from assigning or delegating any right or duty without Amitech's prior written consent.

16. CANCELLATION CHARGES. Buyer is prohibited from canceling this order unless Amitech agrees in writing to a cancellation charge that takes into account work completed and material used, together with all incidental or consequential damages incurred as a result of such cancellation, less any value recoverable from the disposal of such products.

17. TERMS OF PAYMENT. If the financial condition of Buyer becomes unsatisfactory to Amitech, or Buyer is in default to Amitech under any other order, Amitech may require payment in cash before shipment of the products. Any open account balances extending beyond Amitech's statement terms are subject interest at the highest rate allowed by law or 1-1/2% each month based on the unpaid balance. If payments by Buyer are overdue on more than one occasion within a period of consecutive months, Amitech may require payment by certified check, cashier's check, or bank wire transfer as a condition to further shipments. Amitech reserves the right to withhold shipments if any payment is more than thirty days past due. If in Amitech's opinion the financial condition of the buyer at any time does not justify continuance of production or shipment on the terms of payment specified, Amitech may require full or partial payment in advance. All payments hall be in United States Dollars specified by Amitech.

18. TAXES. Prices specified herein do not include any federal, state or municipal sales, use, excise or other taxes. Therefore, in addition to the price specified herein, the amount of any such sales, use, excise or other taxes applicable to the sale of the products covered thereunder shall be paid by Buyer or in lieu thereof Buyer shall furnish Amitech with tax-exemption certificates acceptable to said taxing authorities.

19. ATTORNEYS' FEES. In the event of any controversy, claim or action being filed between the parties respecting this purchase order contract, prevailing party shall be entitled, in addition to all expenses, costs and damages, to reasonable attorney's fees.

C:\Documents and Settings\cossier\Desktop\McGuff-Unturn-0406-0067-4 bh.doc

McGuff-Unturn-0406-0067-4 bh

Page: 66